GILMORE *v.* GILMORE.

4-6814 164 S. W. 2d 446

Opinion delivered July 6, 1942.

*Richard E. Robinson* and *Buzbee, Harrison & Wright,* for appellant.

*Owens, Ehrman & McHaney,* for appellee.

GRIFFIN SMITH, C. J. Catherine M. Gilmore has appealed from an order overruling her motion to vacate a decree granting a divorce on the complaint of her husband, John Joseph Gilmore. It is contended the husband perpetrated a fraud on the court in alleging he was a resident of Arkansas. In procuring the decree June

26, 1941, appellee testified he had been a resident of Little Rock since September, 1940.[1]

Appellee is a member of the G. L. Tarlton contracting firm. His business was to inspect, make estimates, settle controversies, and sign contracts. The firm had a contract at Camp Robinson involving approximately eleven million dollars. It was one of three companies that successfully bid to build North American Aviation Aircraft Assembly Plant at Kansas City.

Stipulation is that appellee procured accommodations at Capitol Hill Apartments in Little Rock September 18, 1940, and continuously retained them until April 10, 1941, but not thereafter. In registering, appellee gave his address as 3615 Olive street, St. Louis. In May and June he was registered at the Phillips Hotel, Kansas City, where he also gave the Olive street address.

During March, April, May, June, and July, 1941, appellee carried an account with First National Bank of Chicago. He gave the management his St. Louis address, where cancelled checks were sent. For March, April, May, and June, 1941, appellee was listed as a resident member of Missouri Athletic Club, St. Louis.

After surrendering his Capitol Hill apartments, appellee had no regular place of abode in Arkansas, but usually went to Hotel Marion, where he registered as from 3615 Olive street, St. Louis.

Subsequent to April 10, 1941, and during the following summer, appellee spent a great deal of time in Washington. June 25—one day before the decree of divorce was obtained—appellee addressed a letter to his wife. The envelope bore the return address: "Missouri Athletic Club, Fourth and Washington streets, St. Louis, Mo." It was postmarked at Kansas City. All letters to his family bore the athletic club address and all communications by mail from members of his family were sent to St. Louis.

---

[1] Appellant and appellee were married in 1912, but had not lived together since 1936. It is asserted that "ample provision has been made for the children born of this marriage." It was also stated in the original complaint that adequate provision would be made for the defendant.

While in Arkansas appellee did not possess visible personal property. He did not carry a Little Rock bank account, did not assess for taxation purposes, and his federal income tax return was made to the St. Louis division.

Commencing August 18, 1941, appellee made his home at 516 Sherman avenue, Neosho, Mo. His personal address was changed from the athletic club. He estimated that between April 10, 1941, and June 26 of the same year, he was in Little Rock "between thirty and forty-five days." During that period he did not register at a hotel "very many times" because "a great many of those trips were daily trips." Appellee thinks he spent as many as twenty days in Little Rock after June 26. In the summer of 1941 he visited the Panama Canal Zone.[2]

In the face of this record appellee (in February of this year) testified that his home was still in Arkansas.

Affidavit for warning order was made May 22, 1941, with proof June 26 that publication had been in a North Little Rock newspaper. John L. Sullivan was attorney ad litem. Sullivan immediately notified the defendant that suit was pending. He informed her regarding time for an answer. In addition, attorneys representing appellee wrote appellant May 23, 1941. She was told that her husband was in Little Rock and contemplated divorce —in fact, that he was filing suit. There was this statement: "Where the defendant is a nonresident the law requires that an attorney ad litem be appointed, and pursuant to this provision of the statute the court has appointed Mr. Sam Wassell, who will notify you officially of the filing of the suit."[3]

Appellant says she did not receive any information from Wassell, but that Sullivan wrote her. His letter was dated May 22, one day before appellee's attorneys informed her that Wassell would notify her "officially" that suit had been filed.

. . .

---

[2] The decree directed payment of $250 per month alimony.

[3] The misinformation given Mrs. Gilmore—that Wassell would be appointed—was not intentional, as the record clearly discloses.

In *Dengler* v. *Dengler,* 196 Ark. 913, 120 S. W. 2d 340, it was held that on motion to vacate a divorce decree, mere allegation there was a meritorious defense, without proof, is insufficient. It was also said that ". . . decrees of divorce are not less stable than are those in other cases."

*Dengler* v. *Dengler* is distinguishable from the present appeal in that Mrs. Dangler was personally served. Both parties were residents of Arkansas.

The question in *Gaines* v. *Gaines,* 187 Ark. 935, 63 S. W. 2d 333, was whether a decree of divorce should be set aside because the attorney *ad litem* had not promptly notified the nonresident defendant that suit was pending. It was held there had been "substantial" compliance with the law"; hence, the court had jurisdiction.

. . .

In the instant case there was want of jurisdiction if appellee were not a *bona fide* resident of Arkansas. His own testimony shows he was not. He came to this state temporarily because a profitable contract required attention. He remained a resident member of the athletic club in St. Louis, and Olive street was his business address. Occupancy of rooms at Capitol Hill Apartments was an incident to his business. Residence in Arkansas was not his object.

. . .

Appellant's motion to vacate the decree was filed October 3, 1941, slightly more than three months after the decree was rendered. *Prima facie,* residence was established for the requisite period of ninety days. This justified the chancellor in rendering the decree. Proof in support of appellant's motion, however, shows that appellee misconstrued the statute; and in representing that he was a resident of Arkansas within the meaning of § 4386 of Pope's Digest, fraud was perpetrated on the court.

The decree is reversed, with directions to vacate the decree of June 26, 1941.